**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dr. R. Ehren Doty, D.C., | No. CV11-01768-PHX-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| Aetna Health, Inc., | |
| Defendant. | |

Plaintiff R. Ehren Doty has filed a motion for benefits under the Employee Retirement Income Security Act ("ERISA"). Doc. 13. Defendant Aetna Health, Inc. has filed a responding trial brief (Doc. 16), and Plaintiff has filed a reply (Doc. 19). Neither party has requested oral argument, and the Court concludes that it can decide this case on the basis of the parties' briefing and the administrative record. Fed. R. Civ. P. 78(b). For the reasons that follow, the Court will deny Plaintiff's motion.

**I.    Background.**

Plaintiff seeks $4,057 for chiropractic services and physical therapy provided to his patient, Kayla Rasmusson ("the Patient"). Doc. 16, at 4. The Patient has been treating with Plaintiff from September 2008 to approximately January 2011 for pain caused by the Patient's scoliosis. *Id.* at 7. In 2010, she treated with Plaintiff 79 times, approximately twice every week. *Id.* Defendant paid for 62 of those visits. *Id.*

Defendant advised Plaintiff that it would be reviewing his treatment of the Patient beginning October 16, 2010. *Id.* Defendant asked Plaintiff for documentation supporting

1  his invoices, including his initial evaluation, his last three progress summaries, his last
2  five daily therapy notes, and documentation supporting the need for ongoing supervised
3  therapy. *Id.* at 7-8.  Based on the information submitted, Defendant conducted a clinical
4  claim review and concluded that chiropractic services provided on or after October 16,
5  2010 would not be covered under the member's benefits plan. *Id.* at 8.  Defendant based
6  this conclusion on the fact that the documentation "does not support that the patient is
7  making continuous progress towards measurable goals in a reasonable time frame for
8  chiropractic treatment of spinal and hip pain." *Id.*

9  Plaintiff appealed.  He advised that the Patient suffers from scoliosis and therefore
10 has "on again off again debilitating back pain, hip pain[,] and migraine headaches." *Id.*
11 He stated that his submitted records memorialize changes in treatment, and included a
12 copy of a radiology report demonstrating that the Patient's scoliosis increased to
13 34 degrees from 28 degrees. *Id.*

14 Dr. Robert Frank reviewed Plaintiff's claim and concluded that the services were
15 not medically necessary because the clinical records reflect chiropractic care "for an
16 ongoing condition with fluctuating symptoms without objective documentation, by means
17 of clinical records, of either a new injury, episode of care[,] or objectively documented
18 clinically significant sustained improvement attributable to the care provided." *Id.*
19 Defendant affirmed its denial.[1]

20 Plaintiff filed a second appeal.  Defendant upheld its decision, stating that
21 "chiropractic care in persons, whose condition is neither regressing nor improving, is
22 considered not medically necessary." *Id.*  Defendant concluded that the information

---

[1] Plaintiff objects that Dr. Frank does not appear to have listed credentials. Doc. 13, at 3.  Defendant has filed a request for judicial notice that Dr. Frank has been a licensed chiropractor in New York since August 13, 1982, as verified on the New York State Department of Education website.  Doc. 15.  This fact is appropriate for judicial notice because it "is not subject to reasonable dispute" and "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b); *see Robinson v. Heritage Elementary Sch.*, No. CV-09-0541-PHX-LOA, 2009 WL 1578313, at *1 n.3 (D. Ariz. June 3, 2009) (taking judicial notice of public records filed with the Arizona Corporation Commission and made available on its website).

1 submitted by Plaintiff did not memorialize that the Patient was making "objective measurable improvements with the therapy in a reasonable time frame." *Id.* Defendant found that the Patient had been treating with Plaintiff for a year without any indication of improvement. *Id.* at 8-9.

## II. Standard of Review.

ERISA allows a participant to bring an action "to recover benefits due to him under the terms of his plan[.]" 29 U.S.C. § 1132(a)(1)(B). Generally, a district court conducts de novo review of a denial of benefits. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). When a plan "unambiguously provide[s] discretion to the administrator" to interpret the terms of the plan and make final benefits determinations, however, the determination is reviewed for an abuse of discretion. *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006) (en banc).

The Republic Services, Inc. Medical Plan ("the Plan") provides: "Aetna will provide certain administrative services under the Plan as outlined in the Administrative Services Contract between Aetna and the Contractholder." Doc. 12-1, at 5 (AR 5). The Administrative Services Contract grants Defendant the discretion to determine entitlement to benefits and to interpret the Plan's terms. Doc. 14-1, at 7 (AR 567) ("Aetna will have discretionary authority to determine entitlement to Plan benefits as determined by the Plan Documents for each claim received and to construe the terms of the Plan."). An abuse of discretion standard therefore applies.

A court applying abuse of discretion review must first determine whether the administrator is operating under a conflict of interest. The presence of such a conflict "must be weighed as a factor in determining whether there is an abuse of discretion." *Abatie*, 458 F.3d at 965 (internal quotations and citations omitted). Although the Supreme Court has not "catalogue[d] the full range of types of conflicts of interest," it has suggested "that a conflict exists when a plan administrator (which acts as a fiduciary toward the plan participants, who are beneficiaries) is also the sole source of funding for an unfunded plan." *Id.* at 965 n.5 (citing *Firestone*, 489 U.S. at 105). Here, Defendant

did not fund the benefits (Doc. 16, at 10), nor does Plaintiff argue that a conflict exists. As a result, the Court must conduct traditional abuse of discretion review based on the administrative record alone. *Abatie*, 458 F.3d at 970.

"A plan administrator's decision to deny benefits must be upheld under the abuse of discretion standard if it is based upon a reasonable interpretation of the plan's terms and if it was made in good faith." *McDaniel v. Chevron Corp.*, 203 F.3d 1099, 1113 (9th Cir. 2000). "Indeed, an administrator's decision 'is not arbitrary unless it is not grounded on *any* reasonable basis.'" *Hensley v. Nw. Permanente P.C. Retirement Plan & Trust*, 258 F.3d 986, 1001 (9th Cir. 2001) (citation omitted), *overruled on other grounds by Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955 (9th Cir. 2006) (en banc).

**III.    Discussion.**

The Plan provides that there is no coverage for "[t]hose services and supplies not necessary, as determined by Aetna, for the diagnosis, care, or treatment of the disease or injury involved. This applies even if they are prescribed, recommended, or approved by the person's attending physician[.]" Doc. 12-1, at 35 (AR 35). The Plan further provides that "[a] service or supply furnished by a particular provider is necessary if Aetna determines that it is appropriate for the diagnosis, the care or the treatment of the disease or injury involved." *Id.* at 100 (AR 100). The Administrative Services Contract and the Plan unambiguously invest Defendant with discretion to interpret the Plan's terms and make benefits determinations. To be "appropriate," the service must "[b]e care or treatment, as likely to produce a significant positive outcome as, and no more likely to produce a negative outcome than, any alternative service or supply, both as to the disease or injury involved and the person's overall health condition[.]" *Id.* Services that are not considered necessary in any circumstance include "[t]hose furnished mainly for the personal comfort or convenience of the person[.]" *Id.* at 101 (AR 101).

Pursuant to the authority delegated to it to determine whether treatments are medically necessary within the meaning of the Plan (Doc. 12-1, at 80 (AR 80)), Defendant created a Clinical Policy Bulletin ("CPB") concerning chiropractic services

(*id.* at 119). The CPB noted that some benefit plans do not cover chiropractic services, but that such services would be covered by the Plan if, among other requirements, "[i]mprovement is documented within the initial 2 weeks of chiropractic care." Doc. 12-1, at 119 (AR 119). "If no improvement is documented within the initial 2 weeks, additional chiropractic treatment is not considered medically necessary unless the chiropractic treatment is modified. If no improvement is documented within 30 days despite modification of chiropractic treatment, continued chiropractic treatment is considered *not* medically necessary. . . . Chiropractic care in persons, whose condition is neither regressing nor improving, is considered not medically necessary." *Id.* (emphasis in original).

Plaintiff claims that the Patient reported a new complaint of left hip pain on September 22, 2010. Doc. 13, at 2; Doc. 12-2, at 73 (AR 273). The Patient stated that it "just started hurting really bad this morning." *Id.* Defendant notes that the Patient had seen Plaintiff 62 times – every two weeks – prior to the new complaint, and that this complaint was reported a mere four days after the Patient's last treatment with Plaintiff. Doc. 12-2, at 22 (AR 222). Defendant found Plaintiff's September 22 record inconsistent with the type of initial evaluation expected for a new complaint. The record does not indicate how the pain started, the frequency of the pain, or any limitations caused by the pain. Doc. 16, at 10-11. In response to the Patient's complaint, Plaintiff prescribed a treatment plan to see the Patient twice a week for four weeks, but continued to treat the Patient regularly after seven weeks. Doc. 12-2, at 76 (AR 276); Doc. 16, at 11. Plaintiff never altered the prescribed treatment or gave reasons for the continued treatment. The physical therapy exercises remained identical for each of the Patient's visits, with the exception of the October 16, 2010 treatment where Patient performed approximately half the exercise she performed at other visits. *See, e.g.*, Doc. 12-1, at 273, 279, 281, 285; Doc. 12-2, at 56, 58. Likewise, the adjustments Plaintiff performed in each visit from September 22 to October 16, 2010 remained identical. Doc. 12-1, at 273, 275, 278-79, 281-82, 284-85, 287-89. Plaintiff adjusted the Patient's lumbar, thoracic, and cervical

1  spine at each visit, regardless of the Patient's complaint. *See id.* Moreover, Plaintiff provided no explanation as to why this treatment was related to the Patient's left hip pain. Doc. 16, at 13.

Plaintiff's records do not suggest any objective improvement in the Patient's condition. Plaintiff indicated the following restrictions in his September 22 notes: C7 left rotation (cervical), T10 left rotation (thoracic), T11 left rotation (thoracic), T4 right rotation (thoracic), T5 right rotation (thoracic), L4 right rotation (lumbar), L5 right rotation (lumbar), and sacrum, anterior superior. Doc. 12-2, at 73-74 (AR 273-74). These restrictions did not change from September 22 to October 16. *See id.* at 278-79, 281-82, 284-85, 287-288. The Patient's subjective statements are the only indication of improvement. On September 22, the Patient reported an 8.0 pain level in her left hip and pelvis. Doc. 12-2, at 73 (AR 273). On October 11, the Patient reported a reduction in pain level to 6.0 in her left hip and pelvis. *Id.* at 84 (AR 284). On October 15, the Patient reported a 4.0 pain level in her pelvis and unchanged pain in her hip. *Id.* at 87 (AR 287). On November 17, the Patient's reported pain in her pelvis was at a 2.0 level, but the pain in her hip was back up to a 7.0 level.[2] Doc. 12-3, at 58 (AR 458). Defendant found the Patient's subjective complaints unreliable because they are contradicted by Plaintiff's records which show that the Patient was never discharged for left hip pain and instead indicated treatment that "seemed to continue into perpetuity." Doc. 16, at 14-15.

Applying the Plan's guidelines to this evidence, Defendant concluded that the treatment provided by Plaintiff is not medically necessary because there is no objective evidence that the Patient's condition is regressing or improving. Doc. 16, at 10. Plaintiff argues that the Patient's objective measurable progress "is that of no pain from day to day" (Doc. 19, at 3), but the Plan clearly provides that services are not considered

---

[2] Defendant claims that it cannot compare the pain in the Patient's left hip from her initial complaint on September 22 to the record on November 17 because the latter discusses right hip pain. Doc. 16, at 14. *Compare* Doc. 12-2, at 73 *with* Doc. 12-3, at 58. Plaintiff explains that this discrepancy is due to a typing error on his part, and that the Patient has always experienced left hip pain. Doc. 19, at 4.

- 6 -

necessary when "furnished mainly for the personal comfort or convenience of the person" (Doc. 12-1, at 101 (AR 101)).  The Court finds that Defendant's denial of Plaintiff's claim is based on a reasonable interpretation of the terms of the Plan, *see* Doc. 12-1, at 119 (AR 119), and there is nothing to suggest that Defendant acted in bad faith.  As a result, Plaintiff has not shown that Defendant abused its discretion.

**IT IS ORDERED** that Plaintiff's motion for benefits (Doc. 13) is **denied**.  The Clerk is directed to terminate this action.

Dated this 9th day of May, 2012.

_____
David G. Campbell
United States District Judge